**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **CHARLES FREEMAN CHRISTIAN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 5:09-CV-351 (MTT)** |
| ) | |
| **JANET WILLIS,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## ORDER

Plaintiff Charles Freeman Christian has sued Defendant Janet Willis, formerly a

nurse at Houston County Detention Center ("HCDC"), for her alleged deliberate

indifference to his serious medical needs in violation of 42 U.S.C. § 1983.[1]  The

procedural history of this case is unusual.  Although Christian filed his Complaint on

October 5, 2009, Willis, through no fault of Christian, was not served until February 28,

2012.  Willis first moved to dismiss the Complaint on the grounds that Christian's claim

was barred by the statute of limitations.  The Magistrate Judge recommended that this

motion be denied and this Court agreed, although for different reasons.  (Doc. 114).

Willis conducted no discovery and allowed the dispositive motion deadline to pass

without moving for summary judgment.  The Court denied Willis's request to file an out

of time motion for summary judgment on the grounds that the sparse record at the time

did not establish as a matter of law that Christian could not recover.  (Doc. 131).

Accordingly, the Court set the matter down for a non-jury trial.  On the eve of that

---

[1] Christian initially brought suit against the Houston County Jail, the Houston County Jail Medical Facility, and Major Charles Holt in addition to Willis.  The other defendants have been previously dismissed from this case.

intended trial, the Court discovered that Christian had filed a pleading  shortly after Willis filed her answer in which, on page ten, he demanded a jury trial:  "I pray that this matter gets to a jury of [six] people."  (Doc. 104 at 10).  The Court concluded that this jury demand satisfied Fed. R. Civ. P. 38 and rejected Christian's offer to waive his right to a jury trial.  However, the Court heard testimony, and allowed the Parties to present whatever evidence they wished to supplement the record.  The Court also allowed the Parties to submit additional briefs on the question of whether summary judgment was appropriate.  Based on this additional evidence, the Court **GRANTS** the Defendant's request to consider her late filed Motion for Summary Judgment.  For the reasons discussed below, the Motion for Summary Judgment is **GRANTED**.

## I.  FACTUAL BACKGROUND

Sometime in January or early February 2007, Christian banged his left lower leg (tibia) on a seat while in the dayroom at HCDC.  (Doc. 1 at 4).  Shortly thereafter, Christian "noticed a protrusion in [his] lower left leg" and began experiencing "on and off" pain.  (Doc. 1 at 4).  On February 6, Christian, believing his left leg to be broken, filled out a medical request form to have his left leg x-rayed or examined.  (Doc. 135 at 2).  On February 8, Nurse Smith[2] examined Christian and, upon finding a hard knot in his lower leg, recommended that Christian be x-rayed.  (Doc. 135 at 2).

Christian alleges that on February 22, 2007, he was called away from eating lunch and taken to an x-ray room within HCDC's medical unit.  Christian alleges that the room had a radiation sign on the door, a padded table for inmates to lay on, and an x-ray machine hanging from the ceiling.  Christian alleges that Willis, who was then the

---

[2] Nurse Smith is not, and has never been, a defendant in this case.

Medical Team Administrator (or "head nurse") at HCDC's medical unit, took an x-ray of his leg.  (Doc. 1 at 4).  Christian contends that Willis, using the x-ray machine located in the medical unit's x-ray room, took x-rays of his leg at different angles, and he heard the machine make noises as she took the x-rays.  Thus, Christian initially believed real x-rays were taken.

Willis contends that she is not qualified to take x-rays, she never took or interpreted any x-rays while working at HCDC, nor has she ever "performed a fake x-ray on any patient."  (Doc. 119-2 at ¶ 7).  Willis asserts, and it is now undisputed, that there is no permanent x-ray equipment on site other than a dental x-ray machine.[3]  Should an inmate need an x-ray, Willis contends, someone in the medical unit would contact a third-party provider, PRI X-Ray at the time of the alleged events, to schedule a visit to HCDC from an x-ray technician with a portable x-ray machine.  (Doc. 119-1 at 3).

PRI's General Manager, Larry Allen, Jr., testified as to PRI's x-ray procedures used during 2007 and produced relevant documents.  PRI's records reflect that one of its technicians came to HCDC on February 22, 2007, and x-rayed seven inmates that day, including Christian.  (Doc. 141-1 at 1).  The technician, then and now, brings all equipment necessary to take an x-ray.  Once the technician has taken all scheduled x-rays and has made all other scheduled visits for the day, she then takes the film to a facility to be developed and read by a radiologist.[4]  The radiologist would then dictate his findings, which would be transmitted to PRI's office and generate reports.  PRI would fax the reports to the facility and would call the facility as well should one of the

---

[3] Nurse Lily Greene, the current Medical Team Administrator at HCDC, testified at the evidentiary hearing that the medical unit's only x-ray equipment was a small dental x-ray machine used exclusively to take pictures of the jaw.

[4] At that time, PRI was not using digital technology.

reports indicate a positive finding.  On February 22, at 10:47 p.m., PRI faxed a report completed by Dr. Michael Roopas to HCDC stating that a "portable left tibia-fibula" examination was done and concluding "[n]onweight bearing views demonstrate normal bone mineralization with no acute bony abnormality," a negative finding.  (Doc. 142-4).  Unfortunately, PRI has not been able to locate the actual x-ray film.

Christian's medical chart was produced by Lily Greene, the custodian of medical records at HCDC.  The chart contains the x-ray report from PRI, and the fax line shows that it was faxed on February 22, 2007, at 10:47 p.m.  (Doc. 142-8 at 1).  Christian's medical records, therefore, are consistent with PRI's records.

On March 20, 2007, Christian sent a medical request form to the nursing staff inquiring about the results of his x-ray and stating, "My leg talks to me quite often, assuring me that something is not right."  (Doc. 135 at 3).  The form also requested nasal spray for his allergy problem.  (Doc. 135 at 3).  Nurse Smith responded on March 21, but she responded only to Christian's request for nasal spray without addressing the x-ray results or the ongoing pain in Christian's left leg.  (Doc. 135 at 3).  Christian alleges that Nurse Smith did not see him in person regarding this request.

Christian sent another medical request form on November 27, 2007, this time addressed to "Head Nurse," regarding his x-ray results and noting that the x-ray had been taken by the "Head Nurse."[5]  (Doc. 135 at 6).  He never received a response to that request.  (Doc. 135 at 6).  On December 3, Christian sent yet another request inquiring as to the results of his x-ray.  This time, someone responded "x-ray was

---

[5] Christian states that all references to "Head Nurse" refer to Willis.

negative," but neither a nurse nor doctor signed the form.[6]  Thereafter, Christian made repeated attempts to obtain his x-ray from both HCDC's medical unit and jail administration to no avail.  Because Christian never received the x-ray results, he has concluded that Willis faked his x-ray.[7]

Christian alleges that he had no further contact with Willis during his stay at HCDC after she allegedly faked his x-ray except for Willis's response to Christian's complaints regarding his allergies on two occasions.  (Doc. 135 at 4-5).  Willis left HCDC in March 2008.  (Doc. 119-2 at ¶ 4).

Christian was eventually transferred to Walker State Prison where a physician ordered several x-rays in February 2009 based, he alleges, on pain in Christian's left leg.  (Doc. 1 at 8).  Christian has produced an unauthenticated x-ray report in which a radiologist states that x-rays were ordered because of left knee pain.  According to the report, the x-rays revealed a healed fracture of the left fibula, or upper leg.  (Doc. 134 at 3).  Christian eventually had surgery on his left knee, which he alleges was necessary because of the prolonged failure to treat the break in his left lower leg.  No physician has opined that Christian's knee surgery was in any way related to a broken lower leg.

## II.  DISCUSSION

### A.  Motion for Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[6] The form does have the name "Nicole" written on it.  However, Nicole Mitchell, a former officer at HCDC, testified that a nurse would often write on the medical request form the name of the officer handing over the form to verify that the medical unit received it.  Christian claims that the response "x-ray was negative" is in Willis's handwriting.

[7] Christian also formed this belief from a conversation he had at some point with Mitchell during which he told her that Willis x-rayed his leg but that he had not gotten the results.  Mitchell explained to him that nurses do not take x-rays at HCDC and that the medical unit instead uses a third party provider.

matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp.*, 281 F.3d at 1224.  The party may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).

### B. Overarching Factual Issues

The record, as expanded by the March 19, 2013, hearing, establishes two facts beyond any reasonable dispute.  Because these facts facilitate the legal resolution of Christian's claim the Court addresses them first.

First, there is no evidence that Willis faked an x-ray.  The contemporaneous documentary evidence establishes that Christian's left leg was x-rayed by a PRI technician and that a radiologist read the x-ray to reveal no fracture.  Even Christian believed initially that his leg was x-rayed.  He only came to believe that Willis somehow concocted a sham x-ray procedure because the x-ray film cannot be found.  While it is unfortunate that the actual film is not available, its absence does not in any way tend to establish that Willis faked taking an x-ray.

Second, there is no evidence that Christian had a broken left tibia in February 2007 or, for that matter, at any time.  The only evidence Christian cites to establish that

his lower leg was broken is the unauthenticated x-ray report from Walker State Prison.
Even assuming that report were admissible, it actually establishes that his lower leg was
not broken.  It revealed a healed fracture in the upper leg.  Nor is there any evidence
that Christian's 2009 knee surgery was somehow connected to the bump on his lower
leg that he suffered in 2007.

### C.  Deliberate Indifference to a Serious Medical Need

A medical services provider's "'deliberate indifference to [the] serious medical
needs of [a] prisoner[ ] constitutes the unnecessary and wanton infliction of pain ...
proscribed by the Eighth Amendment.'"[8]  *Farrow v. West*, 320 F.3d 1235, 1243 (11th
Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

"[A] prisoner must shoulder three burdens" to bring a claim for deliberate
indifference.  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).  First, the
prisoner must satisfy an objective component by showing there was a serious medical
need.  *Id.* (citing *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005)).  Second, he
must satisfy the subjective component by showing that the prison official was
deliberately indifferent to the serious medical need.  *Id.* (citing *Bozeman*, 422 F.3d at
1272).  The prisoner must prove three elements to satisfy the subjective prong of the
deliberate indifference test: "'(1) subjective knowledge of a risk of serious harm; (2)
disregard of that risk; (3) by conduct that is more than [gross] negligence.'"  *Bozeman*,
422 F.3d at 1272 (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)).

---

[8] Christian was a pre-trial detainee when the alleged events occurred.  As a pre-trial detainee,
his rights existed under the Due Process Clause of the Fourteenth Amendment.  Regardless of
whether the claim falls under the Eighth or Fourteenth Amendment, the test for deliberate
indifference remains the same.  *See Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir.
2011) (explaining the deliberate indifference claims of a pre-trial detainee are subject to the
"same scrutiny" as claims falling under the Eighth Amendment).

"Third, as with any tort claim, [he] must show that the injury was caused by the defendant's wrongful conduct."  *Goebert*, 510 F.3d at 1326 (citing *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)).  Ultimately, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, and poor exercise of medical judgment."  *Simpson v. Holder*, 200 F. App'x. 836, 839 (11th Cir. 2006) (citing *Estelle*, 429 U.S. at 104-07).[9]

### 1.  Objective Inquiry – Serious Medical Need

Christian must first satisfy the objective component of the test by showing that he had a serious medical need.  In the Eleventh Circuit, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow*, 320 F.3d at 1243 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir.1994)).  In either situation, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'"  *Id.* (internal citations omitted).

Willis argues that there has been no diagnosis by a physician that Christian's left lower leg was fractured in February 2007 and that Christian's unsupported assertion of a fractured leg is contradicted by his medical chart and PRI's records.  Thus, Willis contends Christian has not sufficiently established a serious medical need.  The Court agrees.  As discussed above, there is no evidence, other than Christian's bare assertion, that he ever broke his left lower leg.  At most, the evidence establishes that Christian had a knot or bump on his leg that caused him sporadic difficulty.  There is no physician diagnosis of any injury and no evidence of any need for medical examination

---

[9] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11th Cir. R. 36-2.

or treatment other than the x-ray performed by the PRI technician, an x-ray that revealed no evidence of fracture.  In short, there is no evidence that Christian had a serious medical need in February 2007.

### 2.  Subjective Inquiry – Deliberate Indifference

To satisfy the first element of the subjective prong of the deliberate indifference test, Christian must first show that Willis had subjective knowledge of a risk of serious harm.  Subjective knowledge requires that a defendant was "'both [ ] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [ ] must also [have] draw[n] the inference.'"  *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  A defendant cannot be held liable for a constitutional violation for failing to alleviate a significant risk that she should have perceived but did not.  *Id.* at 1331 (citing *Farmer*, 511 U.S. at 837).

A plaintiff may not demonstrate subjective knowledge of the risk by "imputed or collective knowledge."  *Id.*  Rather, "[e]ach individual Defendant must be judged separately and on the basis of what that person knows."  *Id.*  However, a factfinder may infer from circumstantial evidence or from "the very fact that the risk was obvious" that the defendant had subjective knowledge.  *Goebert*, 510 F.3d at 1327 (quoting *Farmer*, 511 U.S. at 842).

The linchpin of Christian's case is his subsequently developed theory that Willis faked taking an x-ray on February 22, 2007.  As discussed, there is no evidence supporting this theory.

Given that she did not fake taking the x-ray, Willis argues there is no evidence she knew of Christian's leg injury nor is there any evidence that she acted to deprive

him of medical care for his leg.  Again, the Court agrees.  Even if Christian's bare allegation that Willis took the February 22, 2007, x-ray is taken as true, there is no evidence that Willis had subjective knowledge of a risk of serious harm because the only evidence available to Willis regarding Christian's leg injury would have been the negative x-ray report from PRI.  Christian has presented no evidence, other than his allegation that Willis took the x-ray, that Willis had any involvement with the treatment of his leg injury.  The only evidence of Willis's involvement with Christian's medical treatment during his imprisonment at HCDC involved two requests regarding his allergies.  Even Christian testified at the hearing that he had no further direct contact with Willis after the date of the alleged faked x-ray.  Thus, even if Willis had for some reason reviewed Christian's chart after February 22, 2007, she would have seen only Dr. Roopas's report that Christian's leg was not broken.  Thus, there is no evidence that Willis was subjectively aware of any serious medical need of Christian.

Although factual inferences must be viewed in the light most favorable to the non-moving party and pro se complaints are entitled to liberal interpretation by the courts, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment."  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990) (citations omitted).  "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

Christian has not created a *genuine* issue of fact. Christian's story is "blatantly contradicted by the record," and his allegation that the documents corroborating Willis's story are "fakes," particularly when the documents were prepared and authenticated by a third party with no connection to Willis, is insufficient to meet this burden. Further, Christian has not put anything into the record corroborating his version of events that Willis knew about his leg injury and faked an x-ray and that he never had contact with the PRI technician. Accordingly, Christian cannot establish either prong of a claim for deliberate indifference nor can he withstand summary judgment.[10]

### III. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED,** this 20th day of June, 2013.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[10] Even if Christian were able to establish a claim for deliberate indifference, the evidence now establishes that his claim would be barred by the statute of limitations. Christian admits there is no evidence that Willis knew anything about his continuing leg pain, even if she faked the x-ray as Christian alleges. Thus, the continuing violation doctrine would not allow Christian to postpone the date of accrual of his claim. *See Baker v. Sanford*, 484 F. App'x 291, 293 (11th Cir. 2012) ("The critical distinction in the continuing violation analysis is whether the prisoner complains 'of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does.'"); *Brown v. Roberts*, 2010 WL 1258028, at *1 (M.D. Ga.) ("Where a continuing wrong is involved, 'the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases.'"). Nor does the discovery rule help Christian assuming he argues he could not discover the cause of action until he realized Willis faked the x-ray. As discussed above, Christian never actually "discovered" a fake x-ray occurred, and he has not put evidence into the record that one did occur.